IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.:  3:07-153-JFA |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| RUFUS HOPKINS | ) | |
| | ) | |
| _____ | ) | |

The defendant, Rufus Hopkins, has filed a motion to vacate, set aside, or correct his

sentence pursuant to 28 U.S.C. § 2255.  The government has responded and moved for

summary judgment, contending that defendant's claims are without merit.  Pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court apprised the defendant of his

right and obligation to respond to the motion for summary judgment, and the defendant filed

a timely response.

Prisoners in federal custody may attack the validity of their sentences pursuant to 28

U.S.C. § 2255.  In order to move the court to vacate, set aside, or correct a sentence under

§ 2255, a petitioner must prove that one of the following occurred: (1) a sentence was

imposed in violation of the Constitution or laws of the United States; (2) the court was

without jurisdiction to impose such a sentence; (3) the sentence was in excess of the

maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28

U.S.C. § 2255(a).

In deciding a § 2255 motion, the court may summarily dismiss the motion "[i]f it

plainly appears from the motion, any attached exhibits, and the record of prior proceedings

1

that the moving party is not entitled to relief." Rules Governing Section 2255 Proceedings 4(b); see 28 U.S.C. § 2255(b) (a hearing is not required on a § 2255 motion if the record of the case conclusively shows that petitioner is entitled to no relief).

The present petition was filed on September 13, 2010 and is within the one-year time limitations set forth in 28 U.S.C. § 2255.

After studying the parties' positions as set out in their respective submissions, the court has determined that an evidentiary hearing is not necessary and that the § 2255 petition should be denied for the reasons set out in this order.

PROCEDURAL HISTORY

The defendant, Rufus Hopkins, along with his brother, was charged in February 2007, in a two-count indictment with conspiracy to distribute illegal drugs (5 kilograms or more of cocaine and 50 grams or more of cocaine base) and with conspiring to launder drug profits. The defendant was arraigned on March 13, 2007, and entered a plea of not guilty. This court appointed Columbia attorney David Truitt to represent the defendant and jury selection was scheduled for May 1, 2007. After several continuances, the defendant signed a plea agreement and a proffer letter. Pursuant to the proffer, the defendant was interviewed over a period of three days during which he admitted selling cocaine and cocaine base. At a Rule 11 hearing on September 10, 2000, this court accepted the defendant's guilty plea as to both counts charged in the indictment.

After the Presentence Report (PSR) was prepared, the defendant's court-appointed attorney Truitt moved to withdraw from the case. The attorney had a change of heart and

remained in the case briefly, then renewed his motion to withdraw. The court allowed the second motion to withdraw and appointed attorney John Barton to represent the defendant for the duration of the criminal proceedings.

Meanwhile, the United States Probation Office prepared a new PSR which eliminated the defendant's credit for acceptance of responsibility because of the defendant's failure to pass a polygraph examination relating to his proffer. The amended PSR indicated that the defendant's new guideline range called for a life sentence. The defendant then moved to withdraw his guilty plea, a motion which the court eventually denied.

On September 23, 2008, this court conducted the defendant's sentencing hearing. Multiple objections to the PSR were lodged. After a contentious battle (which involved the court receiving sworn testimony from the defendant, FBI Special Agent Brian Jones, and attorney Truitt), the court resolved all credibility questions adversely to the defendant, adopted the PSR in full, and imposed a life sentence on the defendant.

Despite stipulating to an appeal waiver in his plea agreement, the defendant appealed to the Fourth Circuit and after new counsel was eventually appointed, an *Anders* brief was filed. Ultimately, the Fourth Circuit dismissed the appeal. *See United States v. Hopkins*, 346 F.App'x 923 (4th Cir. 2009).

The defendant now returns to this court with a motion pursuant to 28 U.S.C. § 2255 to vacate, correct, or set aside the sentence imposed by this court. The § 2255 motion raises myriad issues, most of which were considered by, and rejected by, this court at the defendant's sentencing hearing. The government has responded and has moved for summary

3

judgment.

After carefully studying the entirety of the record in this case, and reviewing the positions of the parties as set forth in their memoranda, the court has determined that summary judgment should be awarded to the government in this case.

Summary judgment for the government is appropriate where the admissible evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Williams v. Staples, Inc.* 372 F.3d 662, 667 (4th Cir. 2004) (citing Fed. R. Civ. P. 56(c)). The court must view the facts in the light most favorable to the party opposing summary judgment, and it may not make credibility determinations or weigh the evidence. *Id.*, (*citing Thompson v. Aluminum Co. of Am.*, 276 F.3d 651, 656 (4th Cir. 2002)). However, an issue of fact is "material" only if establishment of the fact might affect the outcome of the lawsuit under governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* "Indeed, to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial." *Hill v. O'Brien*, No. 09-6823, 2010 WL 2748807, at *2 (4th Cir. July 12, 2010) (*citing* Fed. R. Civ. P. 56(e)(2); *see Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir.2002)).

Because the defendant/petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

4

In this § 2255 motion, the defendant challenges virtually every step undertaken by both of the two different attorneys who represented him before this court in connection with his guilty plea and sentence, as well as the steps taken by appellate counsel. The defendant's § 2255 motion is laced with generalities that reveal the extent of his displeasure with his attorneys, but does little to advise the court of the missteps allegedly made by counsel. For example, the defendant contends that David Pruitt, his first attorney, "failed him miserably." The defendant contends that Truitt "failed to subject the government case [sic] to a meaningful adversary testing." He contends that John Barton, the second attorney who represented him at the sentencing hearing, "made several critical miscues in his fatally deficient performance." The defendant claims that Barton "failed to investigate affirmative defense strategies" which would ultimately entitle the defendant to be discharged under Rule 32 of the Federal Rules of Criminal Procedure. However, the defendant does not disclose what the "affirmative defense strategies" that Barton failed to investigate were and he also fails to explain how Rule 32 of the Rules of Criminal Procedure pertaining to Post Conviction Relief (PCR) procedures, would apply to the work of Barton, who represented the defendant at his hotly-contested sentencing hearing.

Hopkins also alleges prosecutorial misconduct, but once again, the allegations are of such a broad nature that it is difficult to glean the error on which Hopkins relies. In support of this allegation, the defendant asserts, without any support in the record, that his conviction is "expressly prohibited pursuant to the black letter of the law." Hopkins contends, paradoxically, that his "innocence of the charged offense appears from the very allegations

5

made in the indictment filed in the case...." Finally, the defendant takes issue with his court-appointed appellate counsel for filing a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967).

## DISCUSSION

It is necessary for the court to provide further background information because of the rather vague and broad allegations made in the present § 2255 motion.

As an initial proposition, it should be noted that this court has reviewed the transcript of the Rule 11 colloquy during which the defendant admitted his guilt to both of the offenses for which he now stands convicted. Following its traditional practice in accepting guilty pleas, the transcript reveals that this court had the defendant placed under oath, then ensured that the defendant was competent, that he understood his right to plead not guilty and request a jury trial at which the government would be required to prove his guilt by competent evidence and beyond a reasonable doubt.

The court carefully went through all of the protections accorded to a criminal defendant such as the right to confront and cross examine witnesses, the right to call witnesses on his own behalf, the right to remain silent, and so forth. The court also ensured that the defendant understood the nature of the charges against him generally and the essential elements of the offense that the government would be required to prove beyond a reasonable doubt at trial. The court fully inquired of the defendant whether he was satisfied with the services of his attorney; whether his attorney had done everything that he had requested the attorney to do for him; and whether there was anything he needed for the

attorney to do for him at that time before the proceeding went forward. The court carefully explored the contours of the maximum and mandatory sentence to which the defendant was exposed by pleading guilty, and thoroughly discussed with him the advisory sentencing guidelines as well as the statutory sentencing factors under 28 U.S.C. § 3553(a).

The court then explored with the defendant, paragraph by paragraph, the essential terms of the written plea agreement he had entered into with the government in this case. Finally, the court asked the defendant if he was pleading guilty freely and voluntarily because he was, in fact, guilty of the crimes charged. The court then allowed the United States Attorney to summarize for the court the evidence that the government had developed during its investigation and would be prepared to go forward and prove if a trial were held in the defendant's case. After thoroughly exploring these and other issues at the Rule 11 colloquy, the court accepted the defendant's guilty plea.

After attorney Barton was appointed to replace Truitt before this court, the defendant lodged multiple objections to the PSR, including the failure of the PSR to award the defendant any reduction for acceptance of responsibility. At the sentencing hearing, the defendant called Truitt, his former attorney, as a witness. Truitt was called because the defendant had alleged, in some of his objections, that Truitt had advised Hopkins to lie to investigators. Truitt, by way of explanation, indicated that after Hopkins had failed the polygraph test undertaken pursuant to his proffer agreement, he told Hopkins that his statements now would likely be used against him and that Hopkins had failed to try to cure the breach and instead refused to meet with agents.

7

The court also heard from FBI Special Agent Brian Jones regarding Hopkins' interview and Jones' opinion that Hopkins was not completely truthful and was minimizing his involvement contrary to the testimony of thirteen historical witnesses the government had assembled to testify in the Hopkins trial.  Jones also indicated that Hopkins had apparently distributed drug quantities to a co-defendant, James Mack, in an effort to curry favor with prosecutors.  He indicated that other evidence indicated that Mack was not responsible for the quantity of contraband that Hopkins had attributed to him and that Hopkins ultimately failed the polygraph primarily regarding his statements concerning the drugs attributable to James Mack.  Agent Jones also testified that Hopkins made subsequent admissions that he had exaggerated the quantities that he attributed to Mack.

Hopkins also testified at his own sentencing, indicating that he had been threatened by Mr. Truitt and Agent Jones, and that both of them persuaded him to lie during the de-briefing with respect to various items.  Hopkins contested virtually every statement made by the witnesses who had attributed kilogram weight drugs to him.  Truitt and Jones both denied threatening Hopkins in any way.

At the conclusion of this testimony, the court announced that it had resolved the factual disputes adversely to the defendant.  The court indicated that it would accept the version of events offered by Agent Jones.  The court also resolved all credibility issues, including drug weights and other sentencing enhancements, adversely to the defendant. This lead to the guideline calculation and life sentence.

On the record before it, and under well-established law developed under *Strickland*,

8

*supra*, the court is constrained to agree with the government that there is no genuine issue of material fact present in this case and that the government is entitled to judgment as a matter of law. As the government points out, Hopkins is largely responsible for his predicament, and no lawyer—no matter how skillful—could have rescued him from the consequences of his actions. As reflected in the PSR, the case against Hopkins was exceptionally strong with thirteen witnesses against him. He also faced a life sentence if convicted at trial. Truitt properly advised Hopkins that the only thing he could do to help himself was to sign a proffer and cooperate. Unfortunately, Hopkins elected to significantly overstate the drug weights against one of the few people against whom he could cooperate in an attempt to obtain a lesser sentence. When this deception was revealed by a failed polygraph, Hopkins refused to try to cure the breach and, instead, chose to make allegations against Agent Jones and Attorney Truitt, and also claimed that he had lied to the court during the Rule 11 plea.

In order to prevail on an ineffective assistance claim, the defendant must satisfy the two-prong test of *Strickland v. Washington*, 466 U.S. 668 (1984). He must first demonstrate that counsel's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–91. In examining the performance of counsel, there is a strong presumption that his conduct was within the wide range of reasonable professional assistance. A reviewing court must be highly deferential in scrutinizing counsel's performance and must filter from its analysis the distorting effects of hindsight. *Strickland*, 466 U.S. at 688–89.

In addition to showing ineffective representation, the defendant must also show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

On the record before it, this court concludes that Truitt provided able, effective counsel to Hopkins. As noted previously, the allegations against Truitt are vague at best. Moreover, the § 2255 motion refers to an attached memorandum of points and authorities that is said to spell out the claims with more detail, but there is no attached memorandum appended to the motion.

The same is true with the representation provided by attorney Barton at the sentencing hearing. Prior to sentencing, Barton filed numerous objections to various paragraphs of the PSR and sought, through the testimony of Truitt and Jones, to prove that Hopkins' failure to pass the polygraph did not materially breach the plea agreement. Curiously, Hopkins claims that Barton failed to prevent the application of an enhancement pursuant to 21 U.S.C. § 851 and failed to prevent the application of a murder cross reference in the sentencing guidelines. There was, however, no § 851 enhancement in this case, and there was no murder cross reference in the PSR calculating Hopkins' guidelines. These allegations are, therefore, not only meritless, but frivolous.

Turning to the allegations of prosecutorial misconduct, Hopkins argues that the government improperly prosecuted him for a crime for which the statute of limitations had already run. He contends, and the government agrees, that the applicable statute of

10

limitations for the crimes at issue in this case is five years. Statutes of limitations are affirmative defenses that must be proven by a defendant. Because Hopkins was indicted on February 21, 2007, the five-year window for the statute of limitations purposes began on February 21, 2002. The PSR alleges that thirteen witnesses had provided information demonstrating that Hopkins was a drug dealer and that Hopkins had supplied kilograms of cocaine to various persons beginning in the early 1990s and continuing until at least late 2005. Moreover, as the government notes in its memorandum, conspiracies are presumed to continue once established "unless or until the defendant shows it was terminated or that he withdrew from it." *United States v. Green*, 599 F.3d 360, 369 (4th Cir. 2010).

Additionally, as the government suggests in its memorandum, the United States had a number of witnesses who testified that Hopkins dealt drugs with them well into the statute of limitations period. Alvin Barker indicated that Hopkins supplied him with cocaine beginning in 1991 and continuing until mid-2005. Indeed, Hopkins admitted that he dealt with Barker until late 2005. Hopkins also admitted that he had purchased quarter ounces of crack cocaine for resale from a drug dealer he identified as "Kev" beginning in late 2006 and continuing until early 2007. Moreover, the PSR gives at least four other individuals who detail Hopkins' active drug involvement in a distribution ring after 2002. There is, therefore, no merit to the defendant's prosecutorial misconduct claim.

Regarding the performance of appellate counsel, it should be noted at the outset that Hopkins waived, in his plea agreement, all appellate issues except those of ineffective assistance of counsel and prosecutorial misconduct. Presumably because of this, counsel

11

appointed to represent Hopkins on appeal filed a standard *Anders* brief, raising issues concerning this court's ruling on Hopkins' motion to withdraw his plea, as well as this court's decision to deny Hopkins any reduction for acceptance of responsibility. Additionally, the Fourth Circuit afforded Hopkins the opportunity to file any supplemental arguments that he wished to include in the record. On this record, the court concludes there was no ineffective assistance rendered by appellate counsel.

Having found no merit to any of the grounds of error asserted, the government's motion for summary judgment (ECF No. 258) is granted, and the defendant's § 2255 motion under (ECF No. 249) is denied.

The defendant's motions for an evidentiary hearing (ECF No. 262), to amend/correct the indictment (ECF No. 264), and for bond or bail (ECF No. 265) are all denied.

Because the defendant has failed to make "a substantial showing of the denial of a constitutional right," a certificate of appealability is denied. 28 U.S.C. § 2253(c)(2).[1]

IT IS SO ORDERED.

April 18, 2011                                            Joseph F. Anderson, Jr.
Columbia, South Carolina                        United States District Judge

---

[1] A certificate of appealability will not issue absent "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (West 2009). A prisoner satisfies this standard by demonstrating that reasonable jurists would find both that his constitutional claims are debatable and that any dispositive procedural rulings by the district court are also debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir.2001).